### McLACHLIN v BARNETT et

Ohio Appeals, 2nd Dist, Miami Co

No 294.  Decided Dec 29, 1932

Kerr, Kerr & Kerr, and Heintz & Heintz, Cincinnati, for plaintiff.

W. A. Haines, Troy, for Joseph Barnett.

### BY THE COURT

At the time that the deed in question was made it fairly appears that defendant, Lena Barnett, had theretofore promised and agreed to execute a deed for her interest in certain property in the city of Troy to plaintiff to secure her for indebtedness theretofore owing by defendant, Lena Barnett, to planitiff an indebtedness incurred by plaintiff at the request of Lena Barnett; that defendant, Joseph Barnett, was likewise a creditor of his sister, Lena Barnett, for money, liberty bonds and the payment of a note for Lena Barnett aggregating $2500.00. It further appears that Lena Barnett willfully failed to comply with her agreement to make the deed to plaintiff. But before this court can set aside the deed to Joseph Barnett it must further appear that he was a party in a fraudulent purpose with defendant, Lena Barnett, to delay and hinder the plaintiff from securing payment of her indebtedness.

The burden of sustaining this proof is upon the plaintiff. The testimony of Lena Barnett is utterly without logic, sequence or consistency. Not having the opportunity of observing her upon the stand we do not know whether her statements are a result of willful purpose to falsify or because of a weakness of memory, mind and purpose produced by trouble brought on her by the husband of her niece who no doubt harrassed her and for whom it seems she borrowed considerable sums of money. We are inclined to believe that the explanation is found in the latter reason. Lena Barnett says finally upon cross examination that she told her brother, Joseph Barnett of her trouble; about the trouble with Mrs. McLachlin and that she had promised her a deed. If this is true, it is very meager in import as to what actually was told Joseph Barnett. In view of her other testimony wherein, in one instance, she says she got the money from the liberty bonds at Troy, later that she cashed them at the Pearl Market Bank and later that she did not cash them at the Pearl Market Bank, together with her statements first that she received no liberty bonds at all and later that she did receive them and other like inconsistent statements her testimony is utterly undependable. Of course, it is possible that her indecision respecting the bonds may have resulted from a fabrication respecting their receipt by her. On the other hand Joseph Barnett testified definitely that he knew nothing of the transaction between plaintiff and Lena Barnett. This does not seem so unreasonable when taken in the light of all the circumstances wherein it appears that Altman was continuously operating to cause Lena Barnett to secure money for him in emergencies.

The state of this record is such that if the burden of proof was on the defendants they might fail but as it is upon the plaintiff, we are of opinion that she has not established one element of her case, namely, the fraudulent knowledge of defendant Joseph Barnett which is clearly required under the sections of the §§11104 and 11105 GC. The prayer of the petition will therefore be denied.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.